People *ex rel.* Braman agt. Culver.

———————◆◆———————

## SUPREME COURT.

The PEOPLE *ex rel.* ELIAS BRAMAN agt. ERASTUS D. CULVER, City Judge of the City of Brooklyn.

Where a mortgagor, in the presence and with the consent of his tenant, relinquished all right and title to the mortgaged premises, placing them in the actual possession and occupation of the mortgagee, *held* that the tenant's term ended, his assent concluding him from claiming further tenancy; and that the premises were surrendered to the paramount title of the mortgagee.

The surrender of title by the operation of law is " an act done by or to the owner of a particular estate, the validity of which he is estopped from disputing, and which could not have been done if the particular estate had continued to exist."

*General Term, Second Judicial District, January,* 1861.

ON the 31st of July, 1859, Abram Brower purchased of Tallmadge Delafield and wife, a house and lot on the north side of Putnam avenue, Brooklyn, for $4,000.

People *ex rel.* Braman agt. Culver.

On the 3d of April, 1860, Brower rented the premises for the term of one year from the first of May following, to James W. Scott, at a yearly rent of $300, payable monthly in advance. Scott immediately thereafter, and without the permission of Brower, re-let the premises to Elias Braman, the relator, himself never entering into possession. Scott paid one month's rent, Braman taking possession, and since holding it.

On the 30th of May, 1860, Brower sold all his right, title and interest to Clark B. Wheeler, for $275, Wheeler taking, subject to a mortgage held by Braman, who shows that the interest had not been paid on the first mortgage, for $2,800, when these proceedings were commenced.

On the first of June a month's rent fell due, and was demanded by Wheeler of both Scott and Braman, who each refused to pay it. Wheeler commenced proceedings to dispossess both the tenant and sub-tenant. Braman raised the question whether or not Wheeler was landlord, and put in issue other questions of fact, Scott not appearing. That controversy resulted in a judgment for Wheeler, on a trial by the city judge without a jury, and a warrant was issued for the removal of the tenant and sub-tenant. While that warrant was still in the hands of the constable, Braman, the relator, obtained of the county judge an injunction against both Wheeler and Scott, and the judgment was brought up for review on *certiorari* to the city judge. The respondents contended that the judge of the court below was not a proper party on the *certiorari*, he having no interest in it whatever. The relator should have assigned errors, which he had not done, and he could not have the benefit of exceptions not taken on the trial. On appeal from the judgment only, the court would not review the case with a view to determine whether the verdict was against the weight of evidence. Other points were taken, but the above were the principal ones.

By the court, EMOTT, Justice.   There are two fatal objections to the right of the defendant to maintain these proceedings.  In the first place, upon the evidence returned to us, the conclusion is hardly to be escaped, that the term and tenancy originally created by Brower had been surrendered, and were no longer in existence.   Scott had a lease for a year from Brower, made on the 3d of April, 1860, but had never taken possession of the premises. Braman, the relator, was a mortgagee of the same premises. He is also shown to have been equitably, and, in fact, the vendor of the property to Brower, although the title was passed from one Delafield to the latter.   Braman became uneasy about his security, and desired to resume both the title and possession, and to extinguish all the rights of Brower.   Brower consented to this on receiving a small sum of money, in consideration of his sparing Braman the trouble, expense and delay of a foreclosure.   Of course, however, Scott's lease and term would be in the way, unless he became a party to the arrangement.   Therefore, about the first of May, Scott, Brower and Braman met, and Brower, with Scott's consent, relinquished the possession of the premises to Braman, as mortgagee.   This was not a transfer of the title, but a surrender of the possession to the paramount title of Braman, under his mortgage, and it was altogether inconsistent with the continuance of Scott the tenant's term.   If Brower had let the premises to a new tenant, and put him into possession with Scott's consent, the authorities are clear that this would have been a surrender in law.   (*Nicholls* agt. *Astentens*, 10 *A. and E., N. S.,* 944; *Whitney* agt. *Myers,* 1 *Duer,* 266; *Scheiffelin* agt. *Carpenter,* 15 *Wend.,* 400; *Wood* agt. *Walbridge,* 19 *Barb.,* 136.)  Mr. Baron PARKE's definition of a surrender by operation of law, in *Lyon* agt. *Reed,* (13 *M. and W.,* 306,) is " an act done by or to the owner of a particular estate, the validity of which he is estopped from disputing, and which could not have been done if the particular estate had con-

tinued to exist." Now here .the mortgagor put the mortgagee in actual possession and occupation of the premises, and relinquished all right whatever to them. His tenant stood by and consented, and he can hardly be heard after this to say, nor can his original landlord, the mortgagor, say that his term still continues. This transaction took place, it will be observed, about the first of May, 1860, and the conveyance to the defendant Wheeler was not until the 30th of that month, so that he came in afterwards, and took only the rights of Brower. There was, therefore, at the date of this conveyance, no term in existence, it having previously been surrendered, and all which passed by the conveyance was the remaining estate of the mortgagor, the equity of redemption which had not been foreclosed. But if this were not so, the case is no better for the defendant. If the term and interest of Scott was not surrendered by the effect of the transaction between Braman and Brower, and his assent to it, then it is outstanding in him, and Braman took only the rights of Brower, subject to this lease. He went into possession as mortgagee and not as tenant, by a title paramount to Brower and not under him. If the effect of his acquiring possession, under the circumstances which attended it, was not to work a surrender of the lease, he may be liable to be evicted by the lessee, but not to be called upon to pay the rent. There can be no pretence that Braman took an assignment of the term or an underlease of the premises from Scott, or that he went into possession as a tenant of either Brower or Scott. He could not be called upon for rent by either Scott or Brower, and with as little reason by Wheeler, as the assignee or grantee of Brower. If the lease by Brower to Scott is still the source of any rights, they can be only the right to the possession by Scott as against the relator, and the right to the rent from Scott either by the defendant as grantee or assignee, or by the relator as mortgagee of Brower.

The defendant, as grantee of Brower, cannot assert a

claim to the rent against the prior mortgagee, nor put him out of possession for its non-payment. There is no relation of landlord and tenant between them, and the defendant Wheeler has none of the rights against the relator upon which these statutory proceedings must be founded.

The proceedings and order of the city judge should be reversed, with costs.